**Wilton M. EVERSLEY,
Plaintiff–Appellant,**

v.

**MBANK DALLAS, Defendant–Appellee.**

**No. 87–1796,
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

March 3, 1988.

---

Frank P. Hernandez, Dallas, Tex., for plaintiff-appellant.

William C. Strock, John V. Jansonius, Dallas, Tex., for defendant-appellee.

Before GEE, GARWOOD and JONES, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Wilton M. Eversley (Eversley) brought this action under Title VII, 42 U.S.C. § 2000e *et seq.*, against defendant-appellee MBank Dallas (MBank) claiming religious discrimination. The district court rendered summary judgment for MBank[1] and Eversley brings this appeal. We affirm.

After the end of the discovery period, which had lasted eight months or more, MBank moved for summary judgment, supported by affidavits and deposition excerpts as well as a list of undisputed facts and a supporting brief. Notwithstanding that local rules called for a response within twenty days, Eversley filed absolutely no response whatever to MBank's motion, nor did he seek an extension of time within which to do so. Approximately seven weeks after MBank's motion was filed, the district court entered its memorandum opinion granting the motion. Eversley filed no motion for reconsideration, and did not otherwise make any attempt in the court below to either cause it to change its ruling or to in any way oppose the granting of the motion. Neither on appeal nor in the court below has Eversley ever offered any explanation for his failure to oppose the motion for summary judgment, or to seek reconsideration; nor has he ever as-

---

1. Eversley's suit also purported to be grounded on 42 U.S.C. § 1981, which the district court held did not apply to religious discrimination since no racial-related claims were made. Eversley does not question this ruling on appeal. Accordingly, we deal only with the Title VII issues, though we see no reason to question the correctness of the district court's conclusions respecting section 1981.

serted that he did not have an adequate opportunity for discovery or the like. Eversley did, however, file a timely notice of appeal. In ruling on MBank's motion, the district court did not grant it because Eversley had in any sense "defaulted." *See Hibernia National Bank v. Administracion Central Sociedad Anonima,* 776 F.2d 1277, 1279 (5th Cir.1985). Rather, the district court accepted as undisputed the facts so listed in support of MBank's motion for summary judgment. In our opinion, the district court acted properly in doing so and, since Eversley made no opposition to the motion, the court did not err in granting the motion as MBank's submittals made a *prima facie* showing of its entitlement to judgment. *See Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Viewed in this light, we conclude that summary judgment for MBank was proper.

Eversley's religion dictated that he not work from sundown on Friday to sundown on Saturday, his Sabbath. He was hired by MBank in April or May 1978 as a control machine operator in MBank's Transit Department, working the second shift which was from 4:00 p.m. until midnight, Monday through Friday. However, as Eversley had informed MBank that his religion prevented him from working between sundown on Friday and sundown on Saturday, he was allowed to work a split shift, working Monday through Thursday from 4:00 p.m. until midnight, and from 11:00 a.m. on Sunday until completion of work. This arrangement continued until 1985, when MBank, due to an environment of increased competition and declining profit, retained an outside consulting firm to evaluate its operations and identify methods to increase efficiency and enhance performance. Among other things, the consultant recommended termination of the split in the second shift in the Transit Department, recommending instead that the second shift complete its work by midnight on Friday. Following the consultant's recommendation meant that Eversley, if he were to remain in his position on the second shift, would have to work Monday through Friday from 4:00 p.m. until midnight. We will not further delve into the details of the consultant's recommendation or the reasons supporting it, because Eversley does not contend that the recommendation was other than bona fide and reasonable, or that it would not be an undue hardship on MBank to continue the split in the second shift.

In mid-June 1985, Eversley's supervisor notified him that he would have to work Monday through Friday from 4:00 p.m. until midnight and that this change would go into effect, as MBank had planned, within three weeks. However, MBank postponed implementation of this change until mid-October 1985 in an effort to work things out for Eversley. As stated in MBank's list of uncontested facts filed below, "After the decision to adjust hours of the second shift control machine operators, Mr. Bateman [the MBank employee who was Eversley's supervisor] checked with the first shift Transit Department supervisor to see if the two first shift control machine operators would switch shifts with Mr. Eversley. They refused to do so." Further, Eversley was given the assistance of MBank's Human Resources Department to find alternative employment within the bank. MBank maintained a bulletin board on which job openings were posted and Eversley was advised to check it periodically during this period. Several openings were posted during this time, but none were of interest to Eversley. He asserts on appeal that all were at lower pay scales. He was informed during this time of one opening in the Lock Box Department, but he decided that the position was not satisfactory. He asserts that it would have involved a twenty percent pay cut. Eversley expressed interest in another position which was open, but he did not possess the minimum required qualifications for it, and hence was unable to avail himself of that position. Other applicants for that job during the same time were also turned down for similar lack of qualifications. Ultimately, on

October 18, 1985, Eversley's supervisor informed him that the split in the second shift would be terminated, and a week later Eversley resigned.

■ Under Title VII, as amended in 1972, a covered employer has the "statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 97 S.Ct. 2264, 2272, 53 L.Ed.2d 113 (1977). Eversley does not contend that there was any intent by MBank to discriminate against him on account of his religious beliefs, or that any animosity to those beliefs was involved.[2] Moreover, as heretofore noted, he does not contend that it would not have been an undue hardship on MBank to continue the split in the second shift. Nor does Eversley contend that MBank did not make a bona fide effort to accommodate his situation after the decision was properly made to terminate the split in the second shift. Indeed, Eversley concedes that what actions MBank took were reasonable. But he contends that these actions "[a]lthough reasonable ... are not accommodations at all. No job offer developed from these efforts." Eversley claims that the offer of a job in the Lock Box Department was not a reasonable accommodation because it involved a twenty percent pay cut. Eversley identifies only one action which he contends MBank should have taken, but failed to, namely, *requiring* one of the two first shift control operators to switch with him. Indeed, that is the sole contention which Eversley makes on appeal, *viz.:* that judgment against him was improper because MBank "failed to demonstrate that it would suffer any undue hardship in accommodating Appellant by *requiring* another employee to trade shifts with him." (Emphasis added.)

We reject Eversley's contention. In *Hardison,* the Court noted that to require the employer "to bear more than a *de min-*

*imis* cost in order to give ... Saturdays off is an undue hardship." 97 S.Ct. at 2277. More directly relevant to Eversley's contention, *Hardison* likewise states:

"There were no volunteers to relieve Hardison on Saturdays, and to give Hardison Saturdays off, TWA would have had to deprive another employee of his shift preference at least in part because he did not adhere to a religion that observed the Saturday Sabbath.

"Title VII does not contemplate such unequal treatment." *Id.* at 2275.

Further, *Hardison* concludes by stating: "[W]e will not readily construe the statute to require an employer to discriminate against some employees in order to enable others to observe their Sabbath." *Id.* at 2277.

Eversley correctly points out that in *Hardison* requiring other employees to switch shifts with the plaintiff would have violated the seniority rights of the other employees under their collective bargaining agreement with the employer-defendant. Nevertheless, the above-quoted language from *Hardison* is not hedged about with qualifications limiting it to situations where the employees to be transferred are protected from such action by collective bargaining agreements, and we would be ill-advised to simply ignore the quoted language. Indeed, we relied on portions of that language in *Brener v. Diagnostic Center Hospital,* 671 F.2d 141, 146–47 (5th Cir.1982). *Brener* did *not* involve employees protected by collective bargaining or other contractual arrangements which would have given them a right to prevent the transfer. Eversley seeks to distinguish *Brener* on the ground that there a transfer had been ordered for one or two specific occasions, with resulting grumbling, while here no transfer was ordered at all. We do not consider that proffered distinction to be substantial. The one or two transfers actually ordered in *Brener* were just for a specific day or two, and no permanent or semi-permanent transfer was ordered in

---

**2.** Similarly, MBank did not question, either in its relationship with Eversley or in the court below, the sincerity and religious nature of Eversley's beliefs. Likewise, the court below did not question that these were Eversley's bona fide religious beliefs; nor do we have any question in that respect.

*Brener* as Eversley would have had MBank do here. Moreover, there does not appear to have been any concrete evidence of disruption in *Brener* besides grumbling. Here, the employer requested specific employees to transfer shifts with Eversley and they "refused." That the employees who "refused" the request would be upset at transferring from an 8:00 a.m. until 4:00 p.m. shift to a 4:00 p.m. until midnight shift seems patently obvious.

Eversley relies on *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515 (6th Cir.1976). There is language in that opinion indicating that an employer might be required by Title VII to *force* other employees to switch shifts to accommodate the religious observances of the plaintiff. *Id.* at 520–21. However, the case does not seem to have really gone off on that basis, as the *Draper* Court observed that "there is little or no proof that the other employees would object at all" and that "[i]deally, the substitution would be effected on a voluntary basis. If not, the Company could rotate the assignment among several. . . ." *Id.* at 521. Here, by contrast, there were apparently only two available switchers, and each of them "refused." Moreover, *Draper* was decided prior to *Hardison*, and thus the continuing validity of any implication in *Draper* that the employer may be required to force other employees into a disadvantageous permanent switch of shifts against their wishes is doubtful. We note in this connection that more recently the Sixth Circuit seems to have assumed that an employer's attempt to seek out employees who would be *willing* to switch shifts would be a reasonable accommodation for purposes of Title VII. *See Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1088–89 (6th Cir.1987). We also observe that in *Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703, 105 S.Ct. 2914, 86 L.Ed.2d 557 (1985), the Court held invalid a Connecticut statute which required an employer to honor each employee's respective Sabbath, in part because the statute contained no exception for the situation "when the employer's compliance would require the imposition of significant burdens on other employees required to work in

place of the Sabbath observers." *Id.* at 2918 (footnote omitted).

In line with the above-quoted language from *Hardison* and our decision in *Brener*, we conclude that it is unreasonable and an undue hardship on an employer to require the employer to force employees, over their express refusal, to permanently switch from a daytime to a nighttime shift in order to accommodate another employee's different Sabbath observation.

■ Moreover, it is not as if MBank made no effort to accommodate Eversley. It postponed its admittedly proper decision to eliminate the split in the second shift for several months in an effort to work something out for Eversley. It counseled with him. It actively sought to find out if others would be willing to switch with him. It did locate another job in the bank, albeit at a lower rate, which Eversley refused. As the Supreme Court recently observed in *Ansonia Board of Education v. Philbrook*, 479 U.S. 60, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986), "[a]ny reasonable accommodation by the employer is sufficient," and if the employer has made any reasonable accommodation, then it need not show that "each of the employee's [proposed] alternative accommodations [which would be more favorable to the employee] would result in undue hardship." *Id.* at 372. Moreover, simply because the proposed accommodation would involve some cost to the employee does not make it unreasonable. *Id.* at 373. Given the entire context and situation, we conclude that MBank reasonably accommodated Eversley's religious beliefs, and that forcing other employees, over their expressed refusal, to permanently switch from the day shift to the night shift would be unreasonable and an undue hardship. *See also Turpin v. Missouri–Kansas–Texas R. Co.*, 736 F.2d 1022 (5th Cir.1984).

Accordingly, we conclude that the district court correctly determined that MBank had not violated Eversley's Title VII rights.

■ MBank asserts that Eversley's appeal is frivolous and requests extra costs

and attorneys' fees incurred on appeal, pursuant to Fed.R.App.P. 38. While we are firmly convinced that the judgment below is correct, we believe it also clear that Eversley's appeal is not frivolous. The request for extra costs and attorneys' fees under Rule 38 is therefore denied.[3]

Therefore, the judgment below is

AFFIRMED.

---

**3.** However, ordinary costs on appeal are assessed against Eversley, as the losing party.