**R.L. CARPENTER, Plaintiff,**

v.

**GULF STATES MANUFACTURERS, INC., Defendant.**

**Civ. A. No. EC 89–276–D–D.**

United States District Court, N.D. Mississippi, E.D.

May 17, 1991.

---

Johnnie E. Walls, Jr., Greenville, Miss., for plaintiff.

J. Gordon Flowers, Columbus, Miss., Carol Sue Nelson, Contangy, Brooks & Smith, Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

This unemployment discrimination action has been brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. The plaintiff, a black male, alleges that he was denied reassignment to light duty work despite an injury to his back and was terminated because of his race as well as in retaliation for filing two charges of discrimination with the Equal Employment Opportunity Commission on his own behalf and for his assistance in the filing of four

other charges. This matter is presently before the court on defendant's unopposed motion for summary judgment.[1] The court finds that the motion is well taken for the reasons set forth below.

## FACTUAL BACKGROUND

■ Because plaintiff has not responded to either the motion for summary judgment or to defendant's statement of undisputed facts,[2] the court relies on the facts as they have been presented by the defendant except where the record reveals a factual ambiguity clearly apparent to the court. Although a district court may not grant summary judgment by default simply because there is no opposition to the motion, *Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir.1985), the court may accept as undisputed the movant's version of the facts and grant a motion for sum-

mary judgment where the movant has made a prima facie showing of its entitlement to summary judgment. *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).[3] Guided by these cases, the court accepts the defendant's statement of facts as presented below, but departs from defendant's presentation where the court's review of the record shows an obvious need to do so.[4]

Defendant Gulf States Manufacturers, Inc., ("Gulf States") is a Starkville, Mississippi manufacturer of metal buildings. The skeletal structure, sides, roofs and related parts are fabricated at the plant, together with sheet metal products such as siding, flashing and down spouts. Plaintiff began working for Gulf States on October 21, 1976, when he was hired for the job of sheet stacker in Gulf State's sheet metal department. Carpenter received pro-

1. This court attempted to contact counsel for plaintiff Carpenter on four separate occasions in order to confirm the correctness of the court file, which showed that no response or request for extension of time had been filed to defendant's summary judgment motion of February 13, 1991. The court has since been informed that plaintiff's failure to respond has been discussed in telephone calls with the magistrate as the parties work to prepare a final pretrial order. On May 10, 1991, the court was informed by plaintiff's secretary that a response to the summary judgment motion was being prepared at this time. Finding the proposed response to be well outside the time limits prescribed by the federal and local rules, the court limits its consideration to the file before it, now confirmed to be correct.

2. Defendant's motion for summary judgment was filed in this court on February 13, 1991. Local Rule 8(d) required that plaintiff respond to the motion for summary judgment within ten days after service of the movant's memorandum. The rule further requires that the respondent to a motion for summary judgment shall either agree that the facts listed by the movant are undisputed or shall state with specificity those facts which are contested and the reasons for contesting such facts. Unif.Local R. 8(d).

3. Similarly, Rule 56(e) provides that when an adverse party does not respond to a properly supported motion for summary judgment, the district court may enter summary judgment against the adverse party, "if appropriate." Fed. R.Civ.P. 56(e). In deciding whether summary judgment is appropriate, the court need not search the record for a genuine issue of materi-

al fact as pre-*Celotex* cases required. *Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir. 1986).

4. Although the court need not comb the record for disputed facts when a party has not responded to a motion for summary judgment, the court has reviewed Carpenter's entire deposition and finds that defendant's proposed findings of fact are accurate in light of this deposition with the following exceptions. First, plaintiff was uncertain of his initial grade level at Gulf States, believing it to be somewhere below Grade 4 and perhaps at Grade 2. Deposition of R.L. Carpenter, pp. 21–22 & 24. Second, plaintiff and defendant dispute whether, and for how long, the company placed him on "light work" with plaintiff stating that only in the three days following the accident was he given "light duty" and that "after that, all the rest of it came as, you know, mostly heavy and some between ..." Deposition of R.L. Carpenter, p. 31. Defendant asserts, on the other hand, that it did comply with Dr. Hollister's restriction and placed him on what light duty it had available. Defendant's Proposed Findings of Fact and Conclusions of Law, p. 2. Defendant also points out that in a worker's compensation claim apparently now on appeal, plaintiff testified that he continued to work at light duty at least until December 1987.

Third and most importantly, plaintiff is of the opinion that other "injured" employees were treated differently than he, even though, as defendant points out, he cannot specify the precise nature of these injuries nor the precise nature of their job duties. He attributes this disparate treatment to his race, an issue discussed in detail below.

motions and eventually reached the Grade 6 job of cut link line operator. As a cut link line operator, plaintiff operated a machine that cut metal sheeting into various lengths. As part of this job, plaintiff was required to move and handle the materials he processed.

In 1984, plaintiff moved from Gulf State's sheet metal department to the warehouse in order to operate a new machine that formed down spouts from flat sheet metal. In addition to operating the down spout machine, plaintiff's regular duties in the warehouse included unloading flashing material from flat buggies for processing. On May 21, 1987, as part of his usual duties in the warehouse, plaintiff removed tin flashing material from a buggy and placed it on his shoulder. Apparently, the materials, weighing between forty to sixty pounds, began slipping from plaintiff's grasp, and he twisted to catch it, injuring his back. Plaintiff reported the injury to his supervisor, Nettie Grayer, and consulted the company doctor, Dr. Jack Hollister, the same day. Dr. Hollister excused plaintiff from work for the remainder of that day and the following day. An exhibit to the deposition shows that plaintiff was examined by Dr. Hollister on May 25, 1987 and that the doctor prescribed "no heavy lifting for now." [5] Gulf States claims to have complied with the doctor's restriction, although plaintiff appears to dispute this fact.[6] Plaintiff was released for full duty by Dr. D.B. Wheat, Dr. Hollister's partner, on January 11, 1988.[7]

Plaintiff subsequently sought treatment from a chiropractor and at least one other physician, Dr. John W. McFadden, who was recommended by the chiropractor. Dr. McFadden recommended that plaintiff refrain from any lifting over twenty-five pounds and provided him with a note to that effect to give to the company. As late as February 14, 1990, Dr. McFadden continued to recommend only part-time, light-duty work that did not include prolonged walking, standing, reaching, bending or stooping.[8] At one point in his deposition, plaintiff stated that he was uncertain whether Gulf States had any light duty work lighter than what they were allowing him to do.[9] The day following receipt of the written work restrictions from Dr. McFadden, Gulf States' personnel supervisor asked plaintiff to see Dr. Hollister once again. Dr. Hollister recommended that plaintiff not return to work and that he go home and rest. Then, on September 12, 1988, representatives from Gulf States called plaintiff into the plant and terminated his employment.

In his deposition, plaintiff stated that he knew of approximately twelve white employees who worked at the plant with some form of injury who appeared to have been given light work. The specifics of these statements are not contained in defendant's presentation of the facts, but may be gleaned from the record. According to plaintiff, a person by the name of Bert Robinson had a back injury apparently sustained in a truck wreck, but plaintiff could not say whether Robinson was placed on light duty because of this injury.[10] Plaintiff also mentioned a person by the name of Robert, who had an artificial leg and had the job of handing out tools. Plaintiff was uncertain whether or not Robert performed other duties as well.[11] As other examples, plaintiff listed the following employees with the following injuries: Jim Butler, who allegedly had back trouble; Dallas Stephens, who worked with a hand injury apparently caused by a machine; Joe Stewart, who allegedly had a back injury sustained on the job; and James Ray, Ed Smith, Terry McMillan and Jack Griffen,

---

**5.** Exhibit 1 to Deposition of R.L. Carpenter.

**6.** *See supra* note 4.

**7.** Exhibit 4 to Deposition of R.L. Carpenter.

**8.** Dr. McFadden appears to have testified to this recommendation in a hearing for worker's compensation benefits held on February 14, 1990.

**9.** Deposition of R.L. Carpenter, p. 54.

**10.** Deposition of R.L. Carpenter, pp. 57 & 63.

**11.** Deposition of R.L. Carpenter, pp. 58–59.

who also allegedly had back injuries.[12] Plaintiff also stated that a man with three fingers missing on one hand was employed by Gulf States, although he could not say specifically how this disability affected the man's job performance.[13] Plaintiff mentioned the names of a few other employees whom he believed to be disabled, some of whom appeared to have been hired just prior to his discharge. Consistently, however, plaintiff did not know the full job duties of these employees, nor did he know whether or not their doctors had limited their performance to only light-duty work. Aside from knowing the names of approximately a dozen allegedly injured people who were white and having a general idea of their jobs, plaintiff acknowledged that he had no evidence that white employees have been treated better or differently.[14]

On September 21, 1988, nine days following his termination, plaintiff filed a discrimination charge with the EEOC District Director in Jackson, Mississippi. In this charge, plaintiff alleged that he was discriminatorily discharged because of his race and in retaliation for filing two previous charges of discrimination against Gulf States and for assisting four females who had filed EEOC charges in the past. In his deposition, however, plaintiff seems to state that he was not fired because of these EEOC charges, but because of his race alone.[15] Additionally, he is unaware of whether the company knew of his assistance in the other EEOC charges involving the four females.[16] The EEOC reached no determination regarding plaintiff's September 1988 charges, but issued a Notice of Right to Sue on July 17, 1989. Carpenter

then filed the present action in this court and alleged discrimination on racial grounds and in retaliation for filing the earlier charges. He seeks equitable relief, as well as punitive and compensatory damages, under Title VII and § 1981.

Previously, on June 27, 1990, this court considered defendant's motion to dismiss and ordered that plaintiff's claims of wrongful termination brought under § 1981 should be dismissed. Although plaintiff did not respond to the motion to dismiss, the court nevertheless denied defendant's motion to dismiss plaintiff's claims of retaliation and failure to promote under § 1981. Similarly, the court denied defendant's motion to dismiss plaintiff's Title VII claims. The court now takes up defendant's motion for summary judgment on these remaining claims.

## DISCUSSION

1. **Summary Judgment Standard in the Context of a Title VII and § 1981 Claim**

   ■ Rule 56 of the Federal Rules of Civil Procedure requires the non-moving party to establish the existence of all the elements essential to the cause of action as to which the non-moving party has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

   > [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that par-

**12.** Deposition of R.L. Carpenter, pp. 63–69.

**13.** Deposition of R.L. Carpenter, p. 71.

**14.** Deposition of R.L. Carpenter, p. 70. The relevant testimony reads as follows:

Q: So, you really, Mr. Carpenter, don't really have any facts or evidence that any of these people were treated differently than you, is that correct?
A: No, I don't have [any] facts.

**15.** Deposition of R.L. Carpenter, pp. 76–78. The questions posed to plaintiff and his deposition testimony read as follows:

Q: Now, you also allege that you had filed two EEOC charges against the company. Do you contend that that is a reason the company terminated your employment or do you contend that it is just your race?
A: It is my race.
Q: Okay. And that those prior EEOC charges, it is your contention, did not play a part in the termination?
A: Not to my knowledge, I don't know.
Q: You don't have any evidence to support that?
A: No.

**16.** Deposition of R.L. Carpenter, p. 89.

ty will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. *Id.*

In a Title VII case, the burden of establishing a prima facie case of racial discrimination rests upon the plaintiff. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Because a claim of discrimination necessarily involves the difficult task of discerning an employer's intent, in *Green,* the Supreme Court developed a four-part test by which a plaintiff could present a prima facie case of discrimination. To establish a prima facie case, plaintiff must show that he 1) belongs to the class of people protected by the statute; 2) was qualified for the job from which he was suspended or for which he sought a position; 3) was terminated or rejected for a position; and 4) that after his termination or rejection, the employer hired a person not in plaintiff's protected class, or retained those, having comparable or lesser qualifications. *Green,* 411 U.S. at 802, 93 S.Ct. at 1824; *see also Whiting v. Jackson State Univ.,* 616 F.2d 116, 120–21 (5th Cir. 1980); *accord Davin v. Delta Air Lines, Inc.,* 678 F.2d 567, 570 (5th Cir.1982). Proving improper motive in a Section 1981 case involves the same four-part standard. *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132, 157 (1989).[17]

A plaintiff who establishes these elements raises an initial inference of discrimination. At that point, the employer must articulate some legitimate, nondiscriminatory reason for the disparate treatment. *Whiting,* 616 F.2d at 121.[18] If the employer articulates legitimate, nondiscriminatory reasons for its actions, the presumption created by the plaintiff's prima facie case dissolves and the burden returns to the plaintiff to prove that the employer's reasons were pretextual. *Thornbrough v. Columbus & Greenville Co.,* 760 F.2d 633, 646 (5th Cir.1985). *Thornbrough* is particularly helpful because it explains the effect of these shifting roles in the context of an employer's motion for summary judgment. At the summary judgment stage, the plaintiff need not present a prima facie case of discrimination, but must simply *raise a genuine issue of material fact* as to the existence of a prima facie case. *Id.* at 641 n. 8. This is why summary judgment is ordinarily "an inappropriate tool for resolving claims of employment discrimination, which involve nebulous questions of motivation and intent ..." *Id.* at 640.

In this case, plaintiff has made no response to defendant's motion for summary judgment. As the court noted earlier in this opinion, however, statements from Carpenter's deposition could be construed as creating issues of fact, despite the lack of response from plaintiff's counsel. Although recognizing the right of this court to accept as undisputed the facts listed in support of defendant's motion, *see Eversley,* 843 F.2d at 174, and further recognizing the responsibility of plaintiff to have developed responsive claims or defenses be-

---

**17.** *See also* M. Player, *Employment Discrimination Law* § 8.02(c) (1988) (explaining that the courts have employed the same four-part test used in Title VII cases in cases involving § 1981 due to the difficulty of proving improper motive).

**18.** Alternatively, a plaintiff may produce *direct* evidence of discrimination. If the plaintiff has succeeded in producing direct evidence, the defendant cannot rebut the direct evidence by merely articulating a legitimate, nondiscriminatory reason for its action. Instead, the defen-

dant must show by a preponderance of the evidence that the same decision would have been reached even in the absence of the allegedly illegal motive. *Guillory v. St. Landry Parish Police Jury,* 802 F.2d 822, 824 (5th Cir.1986), *cert. denied,* 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987). The court need not concern itself with this alternative route because, aside from allegations in the deposition, Carpenter has not presented any evidence—much less direct evidence—of discrimination.

*fore* trial, *C.F. Dahlberg & Co. v. Chevron U.S.A., Inc.*, 836 F.2d 915, 920 (5th Cir. 1988), the court nevertheless considers these disputed matters in light of the Title VII and § 1981 claims plaintiff forwards. Because "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), the court does not concern itself with factual disputes that are immaterial to these two claims. The court will consider plaintiff's § 1981 claims first.

## 2. Plaintiff's § 1981 Claims

Section 1981[19] protects two rights: the right to make contracts and the right to enforce contracts. *Patterson*, 491 U.S. at 178, 109 S.Ct. at 2372, 105 L.Ed.2d at 150. As noted above, the four-part test of *Green* provides a means by which a plaintiff may establish a prima facie case of discrimination affecting either the making or enforcement of a contract. However, with the Supreme Court's decision in *Patterson* came certain restrictions on what type of claims could be actionable under § 1981. In *Patterson*, the Supreme Court held that racial harassment relating to employment conditions is not actionable under § 1981 because the statute "does not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." *Patterson*, 491 U.S. at 171, 109 S.Ct. at 2369, 105 L.Ed.2d at 147.

In the instant case, plaintiff initially sought relief for "unlawful race discrimination in working conditions, job assign-

ments, discriminatory discharges, and unlawful retaliation for opposing unlawful employment practices ..." Complaint, para. 1. Noting that termination claims are no longer actionable under § 1981 in the wake of *Patterson*, this court previously granted defendant's motion to dismiss plaintiff's claim of unfair termination or discriminatory discharge under § 1981. Therefore, the only remaining § 1981 claims are plaintiff's allegations that Gulf States discriminated against him with respect to promotions, and that the company allegedly retaliated against him for filing EEOC charges and for racial reasons.

### a. The Retaliation Claim

Defendant argues that plaintiff abandoned his claims of retaliation by stating in his deposition that he was not fired for the filing of any of the EEOC charges. Defendant specifically refers to pages 76 through 78 of plaintiff's deposition, and to pages 89 through 91. In those pages, plaintiff does state that his allegedly disparate treatment was not due to the EEOC charges, but rather, was due to his race alone. Therefore, it appears that plaintiff has abandoned his claim of retaliation for the filing of previous EEOC charges, although he does continue to claim retaliation on the basis of race.[20]

*Patterson* did not address whether retaliation claims are actionable under § 1981. However, since *Patterson*, the Fifth Circuit has decided that § 1981 no longer covers claims of retaliatory discharge. *Carter v. South Central Bell*, 912 F.2d 832, 840 (5th Cir.1990). In *Carter*, the court reasoned that while retaliation may discourage the

---

**19.** Section 1981 reads: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981.

**20.** As the court noted in its earlier opinion considering defendant's motion to dismiss, the loose nature of plaintiff's pleadings makes it

difficult for the court to determine which matters are raised in the complaint as claims. However, one portion of the complaint asserts that "defendant has exercised a policy and practice of discrimination in employment based on race, including but not limited to racial discrimination in ... taking retaliatory action against employees." Complaint, para. VI. Because plaintiff arguably claims retaliation on the basis of race aside from retaliation for filing EEOC charges, the court considers plaintiff's retaliation claim despite his apparent abandonment of the EEOC part of that claim.

employee from using the legal process, it does not impair or impede him from enforcing his employment contract. *Carter*, 912 F.2d at 840. Because Title VII provides a remedy for such actions, § 1981 need not be construed to provide such a remedy. *Id.* In *Carter*, the plaintiff had complained of retaliatory discharge due the previous filing of EEOC charges—a claim that plaintiff also alleged here, but as noted above, appears to have been abandoned. Although the *Carter* court did not specifically address a claim of retaliation on the basis of *race*, this court finds that such a claim is no different from a claim of discriminatory discharge and that the reasoning of *Carter* applies. By finding, first, that § 1981 no longer applies to discriminatory discharge, and, second, that § 1981 no longer covers retaliatory termination, the court determined that all suits for discriminatory dismissal must be brought under Title VII. *Id.* at 839–841. Therefore, defendant's motion for summary judgment on plaintiff's claim for retaliation under Section 1981 should be granted.

### b. The Promotion Claim

■ Plaintiff appears to allege that Gulf States, by failing to promote the plaintiff or assign him to light duty, violated Section 1981. Under *Patterson*, a claim of failure to promote on the basis of race is actionable under Section 1981 only if "the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." *Patterson*, 491 U.S. at 185, 109 S.Ct. at 2377, 105 L.Ed.2d at 156. In determining whether a promotion constitutes a new contract, a district court "must compare the nature of the employee's current duties [with the] compensation and benefits in the [new] position" to determine whether the promotion

rises to the level of a new and distinct relation. *Harrison v. Associates Corp. of North America*, 917 F.2d 195, 197–98 (5th Cir.1990). Plaintiff has not forwarded any evidence to show why assignment to light duty work could have created a new and distinct relation between plaintiff and defendant. Instead, plaintiff appears to have requested an assignment of lighter duties as part of his existing job with Gulf States. The proposed change in duties appears to be more in the nature of a "transfer" not within the ambit of § 1981 protection. *See Carter*, 912 F.2d at 840.[21]

Even if plaintiff had forwarded evidence to suggest that reassignment would have created a new relationship with his employer, plaintiff has not raised a genuine issue of material fact on the elements of a prima facie case of discrimination. As noted in the preceding section, plaintiff must present facts to suggest that he is part of a protected class, that he "applied for and qualified for an available position, that [he] was rejected and that after [he] was rejected, [defendant] either continued to seek applicants for the position or ... filled the position with a white employee." *Patterson*, 491 U.S. at 186, 109 S.Ct. at 2378, 105 L.Ed.2d at 157. Although clearly part of the protected class, plaintiff has not presented facts to suggest that a light-duty position was available or that white applicants were given such positions in lieu of a position that could have been available to him. Aside from knowing the names of approximately a dozen allegedly injured people and having a general idea of their job duties, plaintiff acknowledged that he had no evidence that white employees have been treated better or differently. Having searched plaintiff's deposition for genuine issues of material fact, the court finds that plaintiff's beliefs are based entirely on sub-

---

21. At one point in his deposition, plaintiff states that he is not claiming that Gulf States failed to promote him.

Q: And you are not in any way contending that you were not promoted to another job because of your race in this lawsuit, or is it just your discharge?
A: I don't understand the question.
Q: Are you in any way claiming you were not promoted?

A: No.
Deposition of R.L. Carpenter, p. 90. Although plaintiff was confused by this line of questioning, the latter part of the statement suggests that plaintiff was concerned about the company's failure to *transfer* him to lighter duties, rather than about the company's alleged failure to *promote* him to a new position.

jective opinion and feelings. Therefore, the court also grants defendant's motion for summary judgment on plaintiff's promotion claim under § 1981.

### 3. Plaintiff's Title VII Claims

■ Having granted summary judgment in favor of the defendant on plaintiff's remaining § 1981 claims, the court now considers plaintiff's Title VII claims. On a motion for summary judgment in a Title VII case, the court must consider whether the evidence, viewed in the light most favorable to the non-moving party and with all legitimate inferences drawn in his favor, creates a genuine issue of material fact and if so, whether it presents a genuine issue of material fact as to whether the articulated reasons for the discharge are pretextual. *Thornbrough*, 760 F.2d at 641; *Equal Opportunity Comm'n v. Brown & Root, Inc.*, 688 F.2d 338, 340 (5th Cir.1982).

Plaintiff is a member of the protected class and he was terminated, so that two of the four required elements of plaintiff's prima facie case exist. *See Whiting*, 616 F.2d at 121. Plaintiff must additionally present facts to suggest that he was qualified for the job and that employees in a similar situation were treated more favorably. Plaintiff has admitted that he was not qualified for his existing job because his doctor had limited him to light-duty work. Assuming that Gulf States could have lessened the duties for Carpenter and still have allowed him to maintain his existing job—an assumption the defendant contests—plaintiff has not shown that Gulf States lessened the duties of other employees similarly situated. The Fifth Circuit has suggested that the disparate treatment must involve circumstances that are otherwise "essentially identical," *Barnes v. Yellow Freight Systems, Inc.*, 778 F.2d 1096, 1101 (5th Cir.1985), or "nearly identical." *Davin*, 678 F.2d at 570. Because the court only has the names of a portion of twelve allegedly injured white employees and a brief description of their disabilities, the court cannot say that the circumstances surrounding their cases were nearly identical. No information has been presented as to the extent of these disabilities, when they occurred or how willing the employer was to accommodate itself to the new or existing circumstance. The court similarly has no information as to the qualifications of these other employees or the extent, if any, of their doctors' restrictions. For all of these reasons, plaintiff has failed to establish a genuine issue of fact as to the existence of a prima facie case.

■ Even if plaintiff could present facts to support a prima facie case, however, summary judgment would still be appropriate because defendant has articulated a legitimate, nondiscriminatory reason for the discharge. Defendant has presented affidavits to show that plaintiff was terminated because he could not perform the physical requirements of the job and because no part-time, light-duty work was available for which he was qualified. One of these affiants, warehouse supervisor Nettie Grayer, stated: "I am a black female, and I can state without reservation that Mr. Carpenter was treated fairly as an employee of Gulf States. No white employee in my department ever received any better treatment than that afforded Mr. Carpenter. In fact, I do not know of any other employee, black or white, who has been allowed to remain on light duty as long as Mr. Carpenter." Both she and the other affiant, Tom Zeppelin, director of employee relations at Gulf States, stated that the termination decision was based on the doctors' recommendations and the unavailability of lighter work. By not responding to the motion for summary judgment, plaintiff has failed to show that these articulated reasons are a mere pretext for racial discrimination. The only evidence of racial discrimination continues to be plaintiff's conclusory allegations that white employees were treated differently. Consequently, no fact question has been presented on this issue and the motion for summary judgment on the Title VII claim should be granted.

■ As a final matter, the court must tackle a question originally posed in defendant's motion to dismiss and for which the court reserved consideration.

That issue is whether Carpenter's complaint alleges a claim of "pattern and practice" discrimination under Title VII and, if so, whether the claim must be stricken because it is outside the scope of the EEOC charge filed by the plaintiff in September 1988. Although the entire complaint focuses on the behavior of Gulf States toward Carpenter, the sixth paragraph of the complaint alleges that Gulf States "has exercised a policy and practice of discrimination ..." Complaint, para. VI. The court concludes that plaintiff has not stated a claim of pattern and practice discrimination, which ordinarily is suited to class actions and involves statistical analysis of an employer's work force and the relevant labor market. *See, e.g., Castaneda v. Pickard*, 781 F.2d 456, 463 (5th Cir.1986). Even if plaintiff had stated such a claim, defendant's motion for summary judgment should be granted because the movant's version of the facts—undisputed due to the lack of response from plaintiff—shows that defendant had not engaged in a pattern of practice of discrimination and that it treated plaintiff as well as or better than other employees similarly situated. Alternatively, summary judgment is appropriate because the claim does lie outside the EEOC charge and any investigation that reasonably would be expected to grow out of the EEOC charge would have focused on Carpenter's particular complaint and not on an entire policy and practice of discrimination at Gulf States. Although "procedural technicalities are not to stand in the way of Title VII complaints," *Sanchez v. Standard Brands*, 431 F.2d 455, 465 (5th Cir. 1970), the permissible scope of the civil action should be limited to the likely scope of the EEOC investigation. *Id.* at 466. As *Sanchez* explained, "the purpose of a charge of a discrimination is to trigger the investigatory and conciliatory procedures of the EEOC." *Id.* By not suggesting a situation of pattern and practice discrimination in the EEOC charge, these purposes would have been circumvented. For all of these reasons, defendant's motion for summary judgment should be granted.

## CONCLUSION

Because plaintiff has failed to present facts sufficient to support either a § 1981 or Title VII claim and has not presented facts to suggest that the reasons proffered by defendant were pretextual, defendant's motion for summary judgment will be granted.