Margurett Gwen TAYLOR, Individually and as Legal Heir and Beneficiary of Steven Craig Palmer, Plaintiff,

v.

DALLAS COUNTY HOSPITAL DISTRICT d/b/a Parkland Memorial Hospital, et al., Defendants.

Civil Action No. 3:95–CV–2854–G.

United States District Court, N.D. Texas, Dallas Division.

Oct. 17, 1996.

375

Jack Leslie Paris, Jr., Law Office of Jack L. Paris, Jr., Greenville, TX, for plaintiff.

Winston L. Borum, Burford & Ryburn, Dallas, TX, for defendants.

## MEMORANDUM ORDER

FISH, District Judge.

Before the court is the motion of defendants Dallas County Hospital District, d/b/a Parkland Memorial Hospital ("Parkland"), and Charles Cobb, M.D. ("Cobb") (collectively, "defendants") for summary judgment. For the following reasons, the motion is granted.

## I. BACKGROUND

This case involves claims of professional negligence and violations of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, founded on allegations that Steven Craig Palmer ("Palmer"), for whom the plaintiff Margurett Gwen Taylor ("Taylor") is legal heir and beneficiary, did not receive proper emergency medical care at Parkland.

On May 12, 1994, Palmer, who was in the end-stage of AIDS, sustained a head injury when he fell down a concrete stairway from a height of approximately seven to nine steps. Plaintiff's First Amended Original Complaint ("Complaint") ¶ 12; Affidavit of Charles G. Cobb, M.D. ("Cobb Affidavit") at 3. An ambulance brought Palmer to Parkland at 2:17 p.m., and he underwent the standard initial screening examination given to all Parkland patients who present head injuries from a fall. Cobb Affidavit at 3. By 2:30 p.m., Palmer had been seen by the triage nurse, and nursing staff began to monitor his vital signs at regular intervals. Id. at 3, 11. A short time later, the second-year resident in charge

of the emergency department assessed Palmer. Id. at 3.

At 2:55 p.m., Cobb arrived to examine Palmer and found intravenous fluids already infusing and that Palmer's vital and neurological signs and oxygen saturation were being monitored. Id. Cobb took Palmer's medical history, noted that Palmer was allergic to penicillin, and performed a physical examination. Id. Cobb observed that Palmer was slightly confused and disoriented but attributed this condition to dementia associated with his chronic AIDS condition. Id. at 6; Dallas County Hospital Admission Note (Exhibit A to Cobb Affidavit). Palmer had a small laceration on his head, but he never lost consciousness and did not complain of nausea, vomiting, or extremity pain. Cobb Affidavit at 3, 4.

Although the laceration was the only visible injury, Cobb ordered a head CT scan to verify that no intracranial damage had occurred. Id. at 4. The scan showed right occipital soft tissue swelling, which Cobb considered normal in light of Palmer's scalp laceration. Id. Cobb also ordered chest and pelvic x-rays and trauma lab studies, all of which were negative. Id. During the time these tests were performed, nursing staff regularly checked Palmer's vital and neurological signs. Id. at 11.

At approximately 9 p.m., after reviewing the results of these tests, Cobb consulted with his supervising senior general surgery resident for the trauma service. Defendants' Motions for Summary Judgment and Brief in Support Thereof ("Brief in Support"), Pediatric Trauma Score at 2 (attached as Exhibit 2 to Brief in Support); Cobb Affidavit at 4. The two concluded that Palmer had sustained no injury from the fall other than the scalp laceration, which Cobb then sutured. Cobb Affidavit at 4, 6. Cobb also concluded that Palmer's end-stage AIDS did not play a role in Palmer's condition other than to explain his mental state during treatment. Id. at 10–11. At 2:05 a.m. on May 13, Palmer was given Tylenol with codeine and discharged by ambulance to Taylor's home. Department of Emergency Services After Care Instructions (attached to Exhibit 2 of Brief in Support). Medical records indicate

that Palmer was unable to execute the discharge form. *Id.*

Shortly after arriving at Taylor's home, Palmer fell while attempting to get out of bed. Complaint ¶ 18. Palmer was hospitalized at Irving Community Hospital, was readmitted there on May 25, 1994, and later died on May 31, 1994. *Id.*

Taylor filed this suit on December 1, 1995, alleging that Cobb and Parkland employees had been negligent in monitoring and treating Palmer because of his HIV-positive status. *Id.* ¶¶ 19, 30. By orders of this court dated April 24, 1996 and August 28, 1996, Taylor's EMTALA claims against Cobb and her claims against both defendants for EMTALA civil penalties and for punitive damages were dismissed. Defendants now move for summary judgment as to Taylor's professional negligence claim against them and EMTALA claim against Parkland. Taylor has not responded to defendants' motion.

## II. *ANALYSIS*

### A. *Evidentiary Burdens on Motion for Summary Judgment*

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving parties are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).[1] "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The movants make such a showing by informing the court of the basis of their motion and by identifying the portions of the record which reveal there are no genuine material fact issues. See *Celotex Corporation v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once the movants make this showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 323–24, 106 S.Ct. at 2552–53. She must show

that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

The movants, however, are not automatically entitled to summary judgment as a result of Taylor's failure to respond to this motion. *John v. State of Louisiana (Board of Trustees for State Colleges and Universities),* 757 F.2d 698, 707 (5th Cir.1985). If the movants fail to discharge their initial burden, the nonmovant need not respond at all. *Id.* at 708. However, if the movants have met their burden under Rule 56, "the nonmovant cannot survive the motion by resting on the mere allegations of [her] pleadings." *Isquith for and on Behalf of Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied,* 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988). Although the court is not permitted to enter a "default" summary judgment by virtue of Taylor's failure to respond, it may accept as undisputed the facts so listed by the defendants in support of their motion. *Eversley v. MBank Dallas,* 843 F.2d 172, 174 (5th Cir.1988). Summary judgment is appropriate if the nonmovant fails to set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. *Topalian v. Ehrman,* 954 F.2d 1125, 1132 (5th Cir.), *cert. denied,* 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992); see also *Little v. Liquid Air Corporation,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (once movant for summary judgment meets burden imposed by Rule 56, nonmovant must go beyond pleadings and designate specific facts showing that there is a genuine issue for trial).

### B. *The Professional Negligence Claims*

#### 1. *Evidentiary Burdens*

Under Texas law, a plaintiff alleging medical malpractice must prove the following four elements: (1) duty of the physician to act according to a certain standard; (2) breach of the applicable standard of care; (3) injury; and (4) causal connection between

---

[1]. The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, af-

fords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company,* 780 F.2d 1190, 1197 (5th Cir.1986).

the breach of care and the injury. *Bradford v. Alexander*, 886 S.W.2d 394, 396 (Tex. App.—Houston [1st Dist.] 1994, no writ); *Pinckley v. Dr. Francisco Gallegos, M.D., P.A.*, 740 S.W.2d 529, 531 (Tex.App.—San Antonio 1987, writ denied). A plaintiff must, through the use of expert testimony, establish the appropriate standard of care and its violation. *Bowles v. Bourdon*, 148 Tex. 1, 219 S.W.2d 779, 782 (1949); *Hall v. Tomball Nursing Center, Inc.*, 926 S.W.2d 617, 620 (Tex.App.—Houston [14th Dist.] 1996, no writ). When moving for summary judgment, a defendant physician may rely on his own affidavit to show that the appropriate standard of care was not breached. *Rodriguez v. Pacificare of Texas, Inc.*, 980 F.2d 1014, 1019–20 (5th Cir.), *cert. denied*, 508 U.S. 956, 113 S.Ct. 2456, 124 L.Ed.2d 671 (1993); *Bradford*, 886 S.W.2d at 396. To defeat a summary judgment motion that relies on expert affidavits, the nonmovant must submit controverting expert evidence. *Rodriguez*, 980 F.2d at 1020; *Milkie v. Metni*, 658 S.W.2d 678, 680–81 (Tex.App.—Dallas 1983, no writ).

### 2. *Defendants' Showing*

Cobb's affidavit, which addresses both his own conduct and that of Parkland's employees, sets forth the proper standard of care for a "reasonably prudent health care provider" attending to a patient in Palmer's condition. Cobb Affidavit at 5. Cobb did not describe the standard in a conclusory manner; rather, he fully explained both the requisite medical procedures and how he and Parkland staff complied with them. See *Hall*, 926 S.W.2d at 620 (holding that for expert's affidavit to be sufficient, "expert must state what the standard [of care] is and explain how the defendant's acts met it").

■ Guided as it must be by the standard Cobb set forth, *Rodriguez*, 980 F.2d at 1020, the court concludes that no genuine issues of material fact exist as to whether Cobb or Parkland's personnel breached their duty to Palmer. The uncontroverted summary judgment evidence shows that Cobb met the applicable standard of care in treat-

ing Palmer: he took Palmer's medical history, performed a physical examination, ordered and reviewed various laboratory tests, reached both initial and final diagnoses, developed a treatment plan, and discharged Palmer when the treatment plan had been executed. Cobb Affidavit at 5. Similarly, Parkland's employees also met the proper standard of care: they consistently monitored Palmer's vital and neurological signs and his oxygen saturation for the entire duration of Palmer's stay. *Id.* at 11, 15–16. Given the facts set forth in Cobb's affidavit, which the court accepts as true, *Eversley*, 843 F.2d at 174, it is clear that defendants have met their summary judgment burden. Since Taylor not only failed to respond to defendants' motion but in so doing also failed to discharge her burden of producing controverting expert evidence regarding the applicable standard of care,[2] there is no genuine issue of material fact as to Taylor's professional negligence claims. The defendants are entitled to judgment on those claims.

### C. *The EMTALA Claim*

#### 1. *Statutory Requirements*

■ EMTALA creates a cause of action for individuals who suffer personal harm as a result of a hospital's failure either to administer an appropriate medical screening examination, 42 U.S.C. § 1395dd(a), or to stabilize an emergency medical condition before transfer, *id.* § 1395dd(b). Although "medical screening examination" is not defined, "emergency medical condition" in a non-pregnant patient is defined as

a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—

(i) placing the health of the individual ... in serious jeopardy,

(ii) serious impairment to bodily functions, or

---

**2.** Plaintiff has also failed to comply with this court's order of February 2, 1996 requiring that

all expert witnesses expected to testify at trial be designated by July 5, 1996.

(iii) serious dysfunction of any bodily organ or part....

*Id.* § 1395dd(e)(1).

To stabilize such a condition, the hospital is required "to provide such medical treatment ... as may be necessary to assure, with reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility." *Id.* § 1395dd(e)(3)(A). "Transfer" is defined to include discharge home. *Id.* § 1395dd(e)(4).

## 2. *Parkland's Showing*

 In light of the uncontroverted summary judgment evidence offered by Parkland, the court finds that no genuine issue of material fact exists as to whether Palmer received a proper medical screening examination or was stabilized before his discharge. Cobb's affidavit clearly states that Palmer received the same initial assessment as would any Parkland patient presenting comparable symptoms. He was screened by the triage nurse, assessed by the second-year resident in charge at the time, and then examined by the resident on call for the trauma service— in this case, Cobb. Because the court accepts as true Cobb's averment that this procedure is standard for all emergency patients, Parkland is entitled to summary judgment as to Taylor's § 1395dd(a) claim. See *Baber v. Hospital Corporation of America,* 977 F.2d 872, 880–81 (4th Cir.1992) (holding that hospital satisfies requirements of § 1395dd(a) if its standard screening procedure is applied uniformly to all patients in similar medical circumstances).

 Similarly, Parkland has shown that no reasonable jury could find it to have violated § 1395dd(c) by failing to stabilize Palmer's condition before discharging him. Because he did not suffer from severe pain, and because he was never at risk of seriously impairing his bodily functions or organs, Palmer did not have an emergency medical condition as defined in the statute. After an extensive series of laboratory and imaging tests, Cobb concluded that the only palpable injury suffered by Palmer was a small scalp laceration. Absent any internal injury or any complication of Palmer's AIDS condition,

neither of which is evidenced in the record, the laceration alone does not rise to the level of an emergency medical condition under EMTALA. As a result, Cobb had no duty to stabilize Palmer prior to discharge. However, by suturing the laceration, prescribing Tylenol (rather than any medicine to which Palmer was allergic) and transferring Palmer home by ambulance, Cobb satisfied the statute's requirement that, within reasonable medical probability, no material deterioration of Palmer's condition should occur following discharge. Though Palmer was unable to sign the discharge form, this is consistent with his disorientation attributable to AIDS dementia and does not in itself create a fact issue as to Palmer's readiness for transfer. Cobb Affidavit at 6. Because the uncontroverted summary judgment evidence reveals that Palmer was stabilized upon discharge, Parkland is not subject to EMTALA liability. See *Green v. Touro Infirmary,* 992 F.2d 537, 539–40 (5th Cir.1993) (since hospital's responsibility under EMTALA ends when it has stabilized individual's medical condition, district court's grant of summary judgment was appropriate where evidence lead to "inescapable inference" that patient was stabilized when discharged).

## III. *CONCLUSION*

Accepting as true all the facts submitted in support of defendants' motion for summary judgment, *Eversley,* 843 F.2d at 174, the court concludes that as to each of Taylor's claims, defendants have satisfied their burden to show that no genuine issue of material fact exists. Accordingly, given Taylor's failure to respond, defendants' motion for summary judgment is **GRANTED.**

**SO ORDERED.**