# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

No. 99-60175

SANDRA M. BRUFF,

Plaintiff - Appellee-Cross-Appellant,

versus

NORTH MISSISSIPPI HEALTH SERVICES,
INC.; NORTH  MISSISSIPPI MEDICAL
CENTER, INC.,

Defendants - Appellants-Cross-Appellees.

Appeal from the United States District Court
for the Northern District of Mississippi

March 28, 2001

Before POLITZ, SMITH, and PARKER, Circuit Judges.

POLITZ, Circuit Judge:

North Mississippi Health Services, Inc. and North Mississippi Medical Center,

Inc. appeal the trial court's denial of judgment as a matter of law, contending that

whether accommodating religious beliefs constitutes an undue hardship, and whether

their accommodation was reasonable, are questions of law, not questions of fact for the

jury. They also appeal the jury's verdict which awards Sandra Bruff back pay and compensatory and punitive damages in her discrimination claim under 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Bruff cross appeals the dismissal of her state law claims, specifically contending that requiring her to counsel homosexuals, and those living in extramarital relationships, about those relationships violated Mississippi sodomy laws, thus making her termination wrongful under a public policy exception to her employed-at-will status. She also appeals the denial of her motion for either reinstatement to her former position or for front pay in lieu thereof. A thorough review of the record persuades that we should reverse the judgment on the Title VII claims and affirm the dismissal of Bruff's state law claims.[1]

## BACKGROUND

After graduating from the Reformed Theological Seminary in Jackson, Mississippi, with a master's degree in marriage and family counseling, Bruff was hired as a counselor by North Mississippi Medical Center, Inc.,[2] first as an adolescent counselor, and eventually as a counselor in its Employee Assistance Program ("EAP"). The Medical Center, a non-profit hospital in Tupelo, Mississippi, established the EAP

---

[1] By consent, this case was tried before the Magistrate Judge.

[2] North Mississippi Health Services, Inc. is the parent corporation of North Mississippi Medical Center.

2

to provide counseling to the employees of various businesses in the region.

Bruff was one of three EAP counselors, one of whom also acted as the program's supervisor. Counseling sessions were held during and after regular business hours in Tupelo and Oxford, Mississippi. Typically, only one counselor would travel to a given location on each occasion.

Early in 1996 Bruff counseled a woman identified only as Jane Doe.[3] Several months later Doe returned for further counseling. At that time she informed Bruff that she was a homosexual and she asked for help in improving her relationship with her female partner. Bruff declined to counsel Doe on that subject, advising that homosexual behavior conflicted with her religious beliefs, but offered to continue counseling Doe on other matters.[4] Another counseling session was scheduled but Doe did not appear. Instead, she complained to her employer about Bruff's actions and her

---

[3] In order to maintain the confidentiality of the client company and its employees seeking counseling, Jane Doe was never specifically identified during the trial proceedings.

[4] The Medical Center introduced evidence that professional counseling standards of practice prohibit counselors from discriminating based upon sexual preferences, while Bruff introduced evidence that the counseling rules of ethics require a counselor to disclose to the patient any areas that the counselor is not qualified or capable of counseling on, and that her actions with Doe were in conformance with those rules. We take no position on what professional standards or ethics codes might require in the field of counseling. Our inquiry here is strictly to what extent Title VII requires the Medical Center to accommodate Bruff's religious beliefs.

employer in turn complained to the Medical Center.

The supervisory counselor informed Bruff a complaint had been lodged and arranged a meeting to explore the matter. In that meeting Bruff confirmed that she had declined to counsel Doe on improving her homosexual relationship because doing so would conflict with her religious beliefs. Bruff was then directed, per company policy, to put in writing exactly what aspects of her counseling responsibilities she wanted to be excused from. Bruff wrote a letter asking that she "be excused from . . . actively helping people involved in the homosexual lifestyle to have a better relationship with their homosexual partners. This would also include helping persons who have a sexual relationship outside of marriage have a better sexual relationship." She added that her problem was not with counseling the person *per se*, but only with providing assistance in improving the homosexual or extra-marital relationship.

In response to this letter Medical Center management met several times to determine if Bruff's request could be accommodated by shifting responsibilities among the three EAP counselors. Eventually it was determined such an accommodation was not feasible. Management then gave her a letter denying her request, stating "Individuals being seen in accordance with all of our EAP contracts obligates us to treat a wide variety of psychiatric disturbances and clinical issues. Our EAP contracts with our customers do not exclude certain categories or issues for individuals with

4

certain types of issues. You also are not able to determine specific patient care issues in advance. Your request could create an uneven distribution of patient work load." The letter also raised a concern that her request to continue treating an individual on some issues while declining to treat others might violate established ethical provisions, and they suggested that she contact the Mississippi Board of Examiners for Licensed Professional Counselors. After the meeting Bruff was relieved of her counseling responsibilities and placed on leave without pay.

Bruff appealed this decision to a vice president of the Medical Center who asked whether there would be any other situations when Bruff would not want to counsel a person. Bruff responded that she would not be willing to counsel anyone on any subject that went against her religion. When the possibility of transferring from the EAP to a section specifically performing pastoral or Christian counseling was discussed she demurred, opining that the head of that section held religious views that were more liberal than hers, and that he likely would not tolerate her conservative perspective.

Based upon Bruff's letter and their discussion, the Medical Center's vice president wrote Bruff affirming the decision to deny her request to counsel only on topics that did not conflict with her religion. In his letter the vice president referenced the small size of the EAP staff; the travel and extended hours the counselors must work; the inability to determine beforehand when a trait or topic might arise that would

5

require referring the employee to another counselor, thus requiring either multiple counselors to travel, or scheduling additional counseling sessions at another time; and the additional sessions that introducing a new counselor might require to build the trust relationship necessary to be effective. He underscored that the logistics of accommodating her request would cause an undue hardship upon the Center, its clients, and the other EAP counselors.

After affirming the denial of Bruff's request, the vice president offered her three options: (1) reconsider her request for accommodation; (2) request a transfer to another position or department in which conflict of care issues were less likely to occur; or (3) resign her position. If she decided to request a transfer, she would be given 30 days to secure another position before she would be terminated.

The Medical Center contacted its in-house employment counselor and asked her to assist Bruff in locating another position within the hospital system. The counselor showed Bruff a list of available openings, and offered her the opportunity to take two tests designed to manifest her aptitudes and interests. Bruff declined to take the tests or to apply for any non-counselor position.[5]

---

[5] The list the employment counselor showed Bruff included several positions outside of the counseling field that would have allowed her to remain in the hospital system, thus retaining her benefits and the ability to apply, on a preferential basis, for a transfer to another counselor position when it became available. Those non-counselor positions, however, generally paid between $7 and $8 an hour, whereas she had been

On the day she met with the employment counselor Bruff applied for the position of Psychiatric Assessment Counselor in the Behavioral Health Department, the only counselor opening available at that time. Medical Center policy called for giving current employees 48 hours notice of position vacancies before posting those vacancies with the public, and guaranteeing an interview to current employees who met the minimum position requirements and who applied within that 48 hours. The Psychiatric Assessment Counselor position, however, had already been posted with the public at that point. The record reflects that Bruff's application was considered but another applicant with superior credentials was selected.[6]

While this application was pending, another counselor position became available; however, Bruff chose not to apply.[7] The 30 day continued employment period lapsed

---

making over $16 an hour as an EAP counselor. Bruff testified she declined the aptitude and interests tests because she already knew what her interests and skills were, *i.e.*, counseling.

[6] The successful applicant had a Ph.D. in a relevant field, as well as marketing experience. Bruff had neither.

[7] Bruff testified that the employment counselor promised to call her when a counseling position became available. She stated that she became aware of the additional opening but did not apply because she felt that if there was any chance of her getting the position the employment counselor would have contacted her. The counselor testified that she told all employees seeking assistance that she was there as a resource, but the responsibility to search was theirs. She posted updated job opening lists three times a week but did not call anyone to advise them of openings, due to the large number of employees in the system.

and Bruff's employment was terminated. The head of the Behavioral Health Department, when placing the notice of termination in Bruff's file, noted that he would not consider rehiring her for the EAP.

Bruff then filed a complaint with the Equal Employment Opportunity Commission. The EEOC concluded its investigation without action, notifying Bruff that she had 90 days to file suit if she so desired. The instant action followed.

The matter was tried to a jury, which found that the Medical Center had discriminated against Bruff because of her religious beliefs, that it had not made a reasonable accommodation for those beliefs, and that it had acted with malice or reckless indifference. The jury awarded her $32,738.44 in back pay; $326,000.00 in compensatory damages; and $1,700,000.00 in punitive damages. The trial judge, acting under 42 U.S.C. § 1981a(b)(3)(D), reduced the total compensatory and punitive damages to the statutory maximum of $300,000.00. Back pay is not included in the statutory cap. Bruff's state law claims, which would not have been subject to a similar cap, previously had been dismissed on a motion for directed verdict.

The parties filed several post-trial motions, all of which were denied. The Medical Center and its parent appeal both the trial court's denial of its motion for judgment as a matter of law, and the jury's adverse verdict. Bruff cross-appeals the dismissal of her state law claims, and the denial of her motion for reinstatement, or

8

alternatively, front pay in lieu thereof.

## ANALYSIS

We first look at the denial of the Medical Center's motion for judgment as a matter of law, reviewing the denial using the same test used by the trial court:

The Court should consider all of the evidence – not just that evidence which supports the non-mover's case – but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable men in the exercise of impartial judgment might reach different conclusions, the motion should be denied . . . .[8]

Appellants do not contest that Bruff established her prima facie case of religious

---

[8] <u>Wardlaw v. Inland Container Corporation</u>, 76 F.3d 1372, 1375 (5th Cir. 1996)(quoting <u>Boeing v. Shipman</u>, 411 F.2d 365, 374 (5th Cir. 1969)(en banc)).

discrimination under Title VII;[9] therefore, the burden shifts to them to show why accommodating her religious beliefs as requested, *i.e.*, allowing her to remain an EAP counselor while only counseling on subjects that do not conflict with her religion, would cause them an undue hardship, or that they have offered an alternative reasonable accommodation to resolve the conflict.[10] Based upon the facts of this case we deem it appropriate to examine each in turn.

Accommodation can take place in two fundamental ways: (1) an employee can be accommodated in his or her current position by changing the working conditions, or (2) the employer can offer to let the employee transfer to another reasonably comparable position where conflicts are less likely to arise.

## I    Retention as an EAP counselor

The Medical Center contends that retaining Bruff in her position as an EAP counselor would cause an undue hardship. The Supreme Court, in <u>Trans World</u>

---

[9] A prima facie case of religious discrimination is established when an employee can show that: (1) he or she had a bona fide religious belief that conflicted with an employment requirement; (2) the employer was informed of that belief; and (3) the employee was discharged for failing to comply with the conflicting employment requirement. <u>Weber v. Roadway Express</u>, 199 F.3d 270 (5th Cir. 2000). The sincerity of Bruff's beliefs has never been questioned.

[10] 42 U.S.C. § 2000e(j).

Airlines v. Hardison,[11] opined that an undue hardship exists, as a matter of law, when an employer incurs anything more than a *de minimis* cost to reasonably accommodate an employee's religious beliefs.

As earlier noted, the evidence established that the Medical Center employed three counselors in its EAP program, one of whom handled supervisory duties in addition to her counseling responsibilities. Thus, any request by Bruff to refer all subjects desiring to be counseled on something that she felt conflicted with her religious beliefs meant, necessarily, that one of the remaining two counselors must assume that responsibility.[12] This might be accomplished by the other counselors either voluntarily assuming a disproportionate workload, or trading counseling assignments with Bruff, on a *quid pro quo* basis, if available.

Voluntarily accommodating the preferences of other counselors was accepted practice at the EAP, and the record reflects that one of the other EAP counselors disliked counseling young children. She requested that she not be given such assignments, and Bruff and the other counselor agreed to assume that responsibility

---

[11] 432 U.S. 63 (1997).

[12] Bruff does not contend, nor does the record suggest, that under its counseling contracts the Medical Center could merely decline to counsel individuals on certain subjects. Nor would hiring additional counselors be reasonable, given the obvious additional cost.

11

whenever possible; however, when neither of them could accommodate her preference the original counselor would counsel the child.

Bruff does not suggest that her request for accommodation was similarly flexible; instead, she contends that under Title VII the Medical Center must excuse her from counseling on all subjects of concern at all times. Furthermore, unlike traditional requests for religious accommodation which merely seek to rearrange an employee's schedule, Bruff determined that she would not perform some aspects of the position itself, and her testimony makes it abundantly clear that she was aware of that before applying for the position. Bruff testified that when she initially applied to be an EAP counselor she assumed she would have to counsel homosexuals, but she also assumed she could refer such individuals when they sought counseling on their relationships. Nothing in the record reflects that she raised this issue with her interviewer, or explored how any such conflicts with her religious beliefs could, in fact, be accommodated. Instead, she apparently assumed she would only have to perform those aspects of the position she found acceptable. Title VII does not require an employer to accommodate such an inflexible position.[13]

Appellants contend, and the record supports, that given the size of the EAP staff,

---

[13]  See Weber, 199 F.3d at 275 (finding secular, flexible exceptions to be *de minimis*, whereas inflexible religious exceptions affecting other employees are not).

the area covered by the program and the travel involved, and the nature of psychological counseling incorporating trust relationships developed over time, any accommodation of Bruff in the EAP counselor position would involve more than *de minimis* cost to the Medical Center. Requiring one or both counselors to assume a disproportionate workload, or to travel involuntarily with Bruff to sessions to be available in case a problematic subject area came up, is an undue hardship as a matter of law.[14] Requiring the Center to schedule multiple counselors for sessions, or additional counseling sessions to cover areas Bruff declined to address, would also clearly involve more than *de minimis* cost.[15]

The trial court, in denying the Medical Center's motion for a directed verdict, acknowledged these as possible hardships to the Medical Center, but found them to be speculative and theoretical. We do not agree. Title VII does not require an employer to actually incur accommodation costs before asserting that they are more than *de*

---

[14] Weber, 199 F.3d at 274 ("The mere possibility of an adverse impact on co-workers . . . is sufficient to constitute an undue hardship."). See also Brener v. Diagnostic Center Hospital, 671 F.2d 141 (5th Cir. 1982)(same).

[15] There was also testimony that substituting counselors would have a potential negative impact upon those being counseled. While adding weight to our decision, we feel the logistical and economic impact on the Medical Center and the other counselors alone establishes, as a matter of law, that accommodating Bruff would result in more than *de minimis* cost.

*minimis*.[16] Further, this situation did not arise from speculation, but from actual experience with Jane Doe and the subsequent concern raised by her employer that other homosexual employees might decline to seek such counseling as a result.

As evidenced by the letter to Bruff initially denying her request, the counseling contracts between the Medical Center and its client companies do not limit the scope of the areas subject to counseling. Considering that Bruff's expressed requirement to be excused from counseling on any subjects that might conflict with her religious beliefs essentially would give her unlimited authority to determine what those conflicts are, and when she must be accommodated, more conflicts would appear to be givens.

## II       Transfer to another counselor position

Title VII does not restrict an employer to only those means of accommodation that are preferred by the employee.[17] Once the Medical Center establishes that it

---

[16] See Weber, 199 F.3d at 274-5 (proposed accommodations can be evaluated as to cost and impact without waiting for them to be implemented, or even waiting for a conflict to occur). The instant action was tried before Weber; thus, the trial judge did not have that opinion for guidance.

[17] Ansonia Board of Education v. Philbrook, 479 U.S. 60, 68 (1986)("By its very terms the statute directs that any reasonable accommodation by the employer is sufficient to meet its accommodation obligation."). See also Equal Employment Opportunity Commission v. Universal Manufacturing Corp., 914 F.2d 71, 73 (5th Cir. 1990)("Offered an accommodation [that is reasonable], the employee cannot insist upon a specific or more beneficial one."); and Eversley v. MBank Dallas, 843 F.2d 172, 176 (5th Cir. 1988)(same).

offered Bruff a reasonable accommodation, even if that alternative is not her preference, they have, as a matter of law, satisfied their obligation under Title VII.

The Medical Center contends that its offer to give Bruff 30 days, and the assistance of its in-house employment counselor, to find another position at the Center where the likelihood of encountering further conflicts with her religious beliefs would be reduced fulfilled its obligations to offer her a reasonable accommodation. We agree.

In her brief Bruff erroneously cites Riel v. Electronic Data Systems, Inc.[18] as authority for her contention that "by definition, giving one the same opportunities as are available to all other persons is not an 'accommodation.'" Riel, which is an ADA case, noted that most discrimination statutes preclude treating persons differently, whereas the ADA, by requiring reasonable accommodation of a person's disabilities, "shifts away from similar treatment to different treatment . . . ."[19] In addition to the distinctions between the definitions of "reasonable accommodation" and "undue hardship" found in the ADA and those developed by the cases under Title VII,[20] Bruff

---

[18] 99 F.3d 678 (5th Cir. 1996).

[19] Id. at 681.

[20] Compare e.g., 42 U.S.C. § 12111(10)(A)("[Under the ADA] the term 'undue hardship' means an action requiring significant difficulty or expense[.]"); with Hardison, 432 U.S. at 84 (under Title VII anything more than *de minimis* expense is an undue hardship).

15

confuses different treatment with preferential treatment. Here, it was giving Bruff the opportunity to transfer once she stated she would not perform all aspects of her job description, instead of simply terminating her as an at-will employee refusing to fulfill her job responsibilities, that served to treat her differently from other employees because her actions were protected by Title VII.

When the Medical Center gave Bruff 30 days to find another position, it also alerted its in-house employment counselor to the situation and directed that Bruff be given assistance in that effort.[21] The record reflects that Bruff was advised of, and applied for, another counselor position. Although she was not successful, the Medical Center was not obligated to give Bruff preference over others with superior credentials when filling the Psychiatric Assessment Counselor position.[22] Bruff was also advised

---

[21] On September 5, 1996, just weeks before the events at issue here took place, the decision in Howard v. North Mississippi Medical Center, 939 F. Supp. 505 (N.D. Miss. 1996), was filed. Howard was an ADA case involving the Medical Center and a plaintiff represented by the same counsel representing Bruff. In that opinion Chief Judge Senter found that the 30 day transfer policy utilized by the Medical Center, including the assistance of the in-house employment counselor, was a reasonable accommodation under the ADA. Id. at 510. While that opinion does not bind us here, we believe the Medical Center was certainly reasonable in believing that, based on Howard, it was complying with the requirements of Title VII by offering Bruff the same opportunity it afforded Howard under the ADA.

[22] It is axiomatic that preferential treatment involves discriminating against one in favor of another, which, in the context of religion, is exactly the conduct proscribed by Title VII. An employer cannot give preference to an employee because of his or her religion any more than it can discriminate *against* that employee for the same reason.

16

of other available positions, which she declined to apply for, as well as the availability of tests that might illuminate whether positions she might not otherwise consider might be of interest.[23]  She declined to even consider a transfer to the pastoral counseling department because she speculated there might be a personal conflict with its director. It is not clear from the record that there was, in fact, an opening available in the pastoral counseling department when the option was proffered.  Of importance here, however, is the fact that Bruff refused to even consider that option before the existence of a vacancy could be explored.  Similarly, her testimony that she declined to apply for the second counselor position when she learned of that opening, because she didn't think the Medical Center would seriously consider her, was based upon pure speculation.  An employee has a duty to cooperate in achieving accommodation of his

---

See e.g., Hardison, 432 U.S. at 81("It would be anomalous to conclude that by 'reasonable accommodation' Congress meant that an employer must deny [the rights] of some employees in order to accommodate or prefer the religious needs of others, and we conclude that Title VII does not require an employer to go that far.").

[23]  As previously noted, these non-counselor positions would have required Bruff to take a significant reduction in salary.  This alone, however, does not make the accommodation unreasonable. See e.g., Hardison, 479 U.S. at 373 (requiring employee to take unpaid leave to observe religious practices was reasonable); and Eversley, 843 F.2d at 176 ("[S]imply because the proposed accommodation would involve some cost to the employee does not make it unreasonable.")(citing Hardison).

17

or her religious beliefs, and must be flexible in achieving that end.[24]  Bruff displayed

almost no such cooperation or flexibility.

Bruff contends that, in any event, whether the Medical Center's transfer offer

was reasonable or not is a jury question, which the trial judge and this court should not

disturb.  Ordinarily, that might be the case.[25]  Here, however, the facts and inferences

point so strongly and overwhelmingly in favor of the Medical Center that reasonable

men could not arrive at a contrary verdict, and denial of the motion for judgment as a

matter of law was error.

## III    Bruff's State Law Claims

Bruff contends that by asking her to counsel clients on improving homosexual

or extramarital relationships, Appellants were asking her to violate Mississippi state

sodomy laws which make certain sexual acts unlawful.  Nothing in the record suggests

---

[24]  See, e.g., Brener, 671 F.2d at 145-46 ("The cases confirm what the statute's use of the term "reasonable" suggests: bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business.").  Because there was some conflicting testimony as to whether Bruff or the employment counselor was responsible for ensuring that Bruff was made aware of all vacancies that came open after their initial meeting, and because in this analysis we must consider all evidence in the light most favorable to Bruff, we do not find that her subsequent failure to check the updated vacancy lists displayed a lack of cooperation on her part.

[25]  Universal Manufacturing, 914 F.2d at 73 ("Ordinarily, questions of reasonableness are best left to the factfinder.").

that she, or any other counselor, was ever asked to counsel anyone on the performance of sexual acts, nor that she ever raised any such concern with anyone. We find that argument specious, and we agree with the trial court that this is strictly a Title VII religious discrimination case. Accordingly, we affirm the trial court's dismissal of Bruff's state law claims.

## CONCLUSION

The evidence, considered in the light most favorable to Bruff, clearly established that requiring the Medical Center to accommodate her while retaining her in the position of EAP counselor would involve more than *de minimis* cost and therefore is, as a matter of law, an undue hardship. Further, the Medical Center's offer to give Bruff 30 days to transfer to another position where conflict of care issues were less likely to arise was beyond peradventure a reasonable accommodation. Accordingly, the trial court erred in denying Appellants' Motion for Judgment as a Matter of Law.

For those reasons, the judgment of the trial court on Bruff's state law claims is AFFIRMED. The judgment on her Title VII claims is REVERSED, and judgment is RENDERED herein for Defendants/Appellants dismissing Bruff's demands with prejudice.[26]

---

[26] Because of our rulings here, we need not reach the remaining issues on appeal.

19