Jessie R. VAUGHN, Plaintiff,

v.

WAFFLE HOUSE, INC., Defendant.

No. CIVA3:01–CV–1298–AH.

United States District Court,
N.D. Texas,
Dallas Division.

March 5, 2003.

Theresa M Gegen, Godwin Gruber, Dallas, TX, for Waffle House Inc, Defendant.

Richard A Valdes, Law Office of Richard A Valdes, Dallas, TX, for Jesse R Vaughn, Plaintiff.

### MEMORANDUM OPINION AND ORDER

SANDERSON, United States Magistrate Judge.

Pursuant to the consents of the parties, the provisions of 28 U.S.C. § 636(c), and the District Court's Order of Reassignment filed on October 19, 2001, came on to be considered Defendant's Motion for Summary Judgment filed on May 15, 2002; Plaintiff's response filed on June 4, 2002; and Defendant's reply thereto filed on June 26, 2002.[1] Having considered the relevant pleadings, including the parties' summary judgment briefs and appendices, as well as applicable legal authorities, the court, for the reasons stated herein, **GRANTS** Defendant's Motion for Summary Judgment.

### I. Factual Background

Jessie Vaughn (hereinafter referred to as "Plaintiff" or "Vaughn") brought suit against Defendant Waffle House, Inc. (hereinafter referred to as "Defendant" or "Waffle House") alleging that he was subjected to religious discrimination in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e(j) ("Title VII"). Specifically, Vaughn claims that Waffle House failed to provide him with a reasonable accommodation which would enable him to practice the tenets of his religion observance of the Sabbathunder the doctrines of the Seventh Day Adventist Church to which he belonged. (Pl.'s Original Compl. at 3 ¶ 9). According to Vaughn, he was forced to accept another position with Waffle House which paid substantially less than, and which lacked the same opportunities for advancement as, his then-current position. (Id. at ¶ 7). Vaughn has satisfied all administrative

---

1. In addition, on June 26, 2002, Defendant filed its Objections to Plaintiff's Summary Judgment Evidence ("Def.'s Objections").

prerequisites to filing a claim under Title VII, including filing a charge with the Equal Employment Opportunity Commission ("EEOC"), receiving a right-to-sue letter from the EEOC, and filing suit within ninety days thereafter. (*Id.* at ¶ 8).

Vaughn began his employment with Waffle House [2] in January of 1998 when he was accepted into its management training program. (Def.'s App. Tab 1 (Deposition of Jessie Vaughn)("Pl's Dep.") at 19). Following completion of the four month program, Vaughn was promoted to the position of unit manager and assigned to a Waffle House restaurant in Grapevine, Texas.[3] (Pl.'s Dep. at 19, 29). In October of 1999, Vaughn was promoted to the position of district manager. (Def.'s App. Tab 3 (Affidavit of Carl Lenderman)("Lenderman's Aff.") at 245–46 ¶ 19). As a district manager, Vaughn's job duties consisted of the following requirements at each restaurant in his district: performing productive work, such as cooking food and serving patrons; inspecting and evaluating the restaurants; overseeing production preparation and shift changes, which entails keeping track of inventory to ensure adequate supplies and ensuring that adequate staff is on hand; accounting for sales transactions and cash on hand; supervising and managing both employees and unit managers, including recruiting, hiring, evaluating, and disciplining the same; handling equal opportunity compliance issues;

tracking and controlling costs; ensuring compliance and training on food safety issues; and dealing with security and safety issues, including theft and difficult customers. (*Id.* at 241–242 ¶ 9). Unit and district managers' work assignments are scheduled so that each Waffle House restaurant has management coverage everyday. Under this scheduling scheme unit managers work from 9 to 11 hours per day for six successive days, followed by two days off. District managers are also required to work 9 to 11 hours per day, but, because they cover for unit managers when they are scheduled off or out sick, it is common for district managers to work for six successive days and then be off for only one day. (*Id.* at 242 ¶ 12). Waffle House employees are scheduled to work in one of three separate time periods, first shift (7 a.m. to 2 p.m.), second shift (2 p.m. to 9 p.m.), and third shift (9 p.m. to 7 a.m.)during each 24–hour period. (*Id.*).

Vaughn was raised as a member of the Seventh Day Adventist Church, which prescribed the strict observance of the Sabbath, i.e., abstaining from work-related activities from sundown on Friday to sunset on Saturday for its members. (Pl.'s Dep. at 4; Pl.'s App. at Tab 1 (Affidavit of Jessie Vaughn)("Vaughn's Aff.") at 000002 ¶ 3). However, prior to December 1999, Vaughn did not observe this Sabbatarian requirement while employed by the Waffle House, nor did he inform any of his supervisors of a need for time off for such an observance.[4] (Pl.'s Br. at 3; Def.'s Br. at

**2.** Waffle House operates a chain of restaurants, bearing the same name, which are open 24 hours a day, 7 days a week, everyday of the year, including holidays. (Def.'s App. Tab 3 (Affidavit of Carl Lenderman)("Lenderman's Aff.") at 240 ¶ 4).

**3.** The Waffle House's hierarchical management structure is as follows: a unit manager oversees an individual restaurant and, in turn, reports to a district manager, who oversees two or three restaurants and, in turn, reports to a division manager, who oversees three or

four districts and, in turn, reports to the area vice president. (Lenderman's Aff. at 240 ¶ 5).

**4.** During his deposition, Vaughn testified that the issue of his religion (i.e., his need for time off to observe the Sabbath) did not arise at any time during the time he completed his application for employment with Waffle House. (Pl.'s Dep. at 19). In fact, notwithstanding the fact that he stated on his employment application that he had received an Adventist based education in both high school and college, he answered "No" to a question regarding whether there were any days of the

4). Vaughn first broached the subject of needing an accommodation for observance of the Sabbath with Trent Angelle, his division manager, and/or Carl Lenderman, the area vice president, in December of 1999, one week before Christmas.[5] (Pl.'s Dep. at 58–61; Pl.'s Aff. at 000002 ¶¶ 3–4). After so apprising his supervisors, Vaughn was given Christmas Eve and Christmas Day off, a Friday and Saturday, respectively. (Pl.'s Dep. at 61; Lenderman's Aff. at 246–47 ¶ 24). Sometime after Christmas, Vaughn rejected an offer from Lenderman which would have provided Vaughn time off from work on Saturdays to attend religious services. (*Id.*). Thereafter, Lenderman asked Vaughn to schedule a meeting with his pastor for the purpose of discussing possible accommodations for Vaughn. (*Id.* at 247 ¶ 25; Pl.'s Dep. at 65–66). Both Lenderman and Angelle joined Vaughn and his pastor at this meeting. (*Id.*). At the conclusion of this meeting, a tentative accommodation plan, endorsed by Vaughn's pastor, was reached between Lenderman, Angelle, and Vaughn whereby he would be permitted to take a day off every other Sabbath. (Pl.'s Dep. at 70; Lenderman's Aff. at 247 ¶ 25). Vaughn experimented with this accommodation for approximately two weeks, after

which he informed Angelle that he felt that observing the Sabbath only once every other week was unsatisfactory and that the same was "bothering [him]" and that he "didn't feel good about it." (Pl.'s Aff. at 000002 ¶ 7; Pl.'s Dep. at 168–69). For approximately seven weeks, from mid January through the end of February 2000, Vaughn was permitted to take off *every* Sabbath. (Pl.'s Dep. at 170; Lenderman's Aff. at 247 ¶ 26). For various reasons, including needing Angelle, Lenderman, and other mangers to cover for Vaughn during his time off for observance of the Sabbath, Waffle House found that this scheduling scheme was "not operationally sustainable,"[6] as a result of which Lenderman along with Waffle House's corporate office developed a list of 5 alternatives[7] to accommodate Vaughn's religious beliefs. (Lenderman's Aff. at 247–48 ¶¶ 26–28). On February 28, 2000, Vaughn drafted a letter addressed to Lenderman in which Vaughn opined that he could remain an effective district manger while observing his religion's Sabbatarian requirement. After presenting data from the two weeks in which he was off for the Sabbath, including sales data which indicated that Vaughn's stores outperformed the other district manager's stores within

---

week or holidays which he would not be able to work. (Def.'s App. at 228).

**5.** In his affidavit, Vaughn averred that, prior to raising this issue with his Waffle House supervisors, he had attended a church service in December during which a sermon "touched [his] heart" and caused him to feel a "deep and sincere calling" to return to his faith and to follow its teachings. (Pl.'s Aff. at 000002 ¶ 3).

**6.** In his affidavit, Lenderman stated that the third shift on Friday as well as the first shift on Saturday, the two which Vaughn would be absent from due to his observance of the Sabbath were the busiest shifts at Vaughn's restaurants. (Lenderman's Aff. at 242 ¶ 10; Def.'s App. at 253).

**7.** On February 25, 2000, Lenderman drafted a "Memorandum" addressed to Vaughn, outlining 5 possible position and accommodation combinations to satisfy his religious needs, including remaining as a district manager with 2 Saturdays off in a 4 week period; serving as a unit manager with the possibility of every Saturday off; serving as a senior operating partner with the possibility of every Saturday off; serving as a human resource specialist with every Saturday off; and serving as a human resource specialist and management recruiter with every Saturday off. (Def.'s App. at 259). Lenderman noted that the last combination included a "newly created position." (*Id.*). However, Vaughn disagrees with this contention. (Pl.'s Aff. at 000005–06 ¶ 20).

his division and that his stores also had the lowest food costs as well, Vaughn asked for a 6 month trial period during which he would remain as a district manger and take off work on the Sabbath, after which, if his sales, food costs, performance or operations were unsatisfactory, he would voluntarily transfer to another position. Alternatively, if he were not permitted to continue in his position as a district manger, he advised that he accepted the position of human resource specialist & management recruiter.[8] (Def.'s App. at 234). Waffle House denied Vaughn's request for a 6 month trial period and, thereafter, Vaughn began his new human resources/management recruiting position.[9] However, due to perceived poor performance, Vaughn was eventually terminated from this position. (Pl.'s Br. at 1).

## II. Analysis

### A. Summary Judgment—Standard of Review

To prevail on a motion for summary judgment, the moving party has the initial burden of showing that there is no genuine issue of any material fact and that judgment should be entered as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The materiality of facts is determined by substantive law. *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. An issue is "material" if it involves a fact that might affect the outcome of the suit under governing law. *See Burgos v. Southwestern Bell*

*Telephone Co.*, 20 F.3d 633, 635 (5th Cir.1994)(citing *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). Once the moving party has made an initial showing, the party opposing the motion for summary judgment may not merely rely on her pleadings, but must come forward with competent evidentiary materials that establish a genuine fact issue. *Anderson*, 477 U.S. at 256–257, 106 S.Ct. at 2514; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Neither conclusory allegations nor hearsay statements are competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.1996) (citation omitted). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the opponent's claim. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998) (citation omitted). The court must resolve any factual controversies in favor of the non-moving party. *Richter v. Merchants Fast Motor Lines, Inc.*, 83 F.3d 96, 98 (5th Cir.1996) (citation omitted). Thus, in reviewing all of the evidence, the court must consider it in a light most favorable to Mr. Vaughn's claims, drawing all factual inferences therefrom and making all credibility determinations related therefrom in his favor. However, summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

---

8. On February 28, 2000, the same day he drafted this letter to Lenderman, Vaughn filed his complaint with the EEOC. (Pl.'s Original Compl. at 3 ¶ 8). However, neither party has provided the court with a copy of the same.

9. Vaughn claims that he was punished for insisting on his right to observe his religious beliefs by being "demoted" from his position as district manager to a position which reduced his salary by 50%. (Pl.'s Aff. at 000005 ¶ 18; Pl.'s Br. at 2).

the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. 2548.

## B. Applicable Law

### Title VII

Title VII prohibits covered employers from, *inter alia,* discharging an employee or otherwise discriminating against "any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, *religion,* sex, or national origin." 42 U.S.C. § 2000e–2(a)(1)(emphasis added).

## C. Plaintiff's claim: Religious Discrimination

### 1. Prima Facie case

■ A plaintiff establishes a *prima facie* case of religious discrimination when he demonstrates: (1) that he has a bona fide religious belief that conflicts with an employment requirement; (2) that he informed his employer of this belief; and (3) that he was discharged for failing to comply with the conflicting employment requirement. *Bruff v. North Mississippi Health Srvs., Inc.,* 244 F.3d 495, 499 n. 9 (5th Cir.), *cert. denied,* 534 U.S. 952, 122 S.Ct. 348, 151 L.Ed.2d 263 (2001)(citing *Weber v. Roadway Express,* 199 F.3d 270, 273 (5th Cir.2000)).

■ Based on the evidence presented to the court, it is undisputed that Vaughn embraced a bona fide religious belief as a parishioner of the Seventh Day Adventist Church, i.e., its Sabbatarian requirement which conflicted with his ability to work after sunset on Friday nights and before sundown on Saturday nights. It is further undisputed that Vaughn informed his immediate supervisors at Waffle House, Angelle, his divisional manager, and Lenderman, the area vice president of this belief. However, Waffle House claims that Vaughn cannot establish a *prima facie* case of religious discrimination because he

was not discharged from his position as a district manager at Waffle House. Alternatively, Waffle House claims that even if Vaughn can establish a *prima facie* case of religious discrimination, it "reasonably accommodated" his religious practice of Sabbatarianism.

Despite Plaintiff's characterization of his transfer from the position of district manager to that of human resource specialist and management recruiter ("human resource specialist") as a demotion, the summary judgment evidence establishes that he accepted the latter position, albeit begrudgingly, because it was the only position of the five alternatives presented to him which insured that he would have *every* Sabbath off. (Def.'s App. at 259).

In support of his contention that he has presented a *prima facie* case Vaughn cites *Opuku–Boateng v. State of California,* 95 F.3d 1461 (9th Cir.), *cert. denied* 520 U.S. 1228, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997), a case which he believes should provide guidance to the court. In *Opuku–Boateng,* the Ninth Circuit Court of Appeals reviewed a claim of religious discrimination asserted by a member of the Seventh Day Adventist Church who had applied for employment with the State of California's Department of Food and Agriculture, but who was not hired after having informed the Department that he could not work on Saturdays due to his need to observe the Sabbath. Preliminarily, the court acknowledged that a two-part analysis is employed in reviewing Title VII religious discrimination claims; a plaintiff is charged with establishing a *prima facie* case of religious discrimination and, if such a case is made, a defendant must demonstrate that it "reasonably accommodated" the plaintiff's religious needs. *Id.* With respect to the elements of a *prima facie* showing, the Ninth Circuit noted that a plaintiff need not be discharged in order

to satisfy his obligation, since a threat of discharge or other adverse employment action was sufficient to satisfy the same. *Id.* at n. 9 (citation omitted). Thereafter, the court observed that the State of California had conceded that Opuku–Boateng had established a *prima facie* case of discrimination and, as such, focused its review on the issue of whether the State of California upheld its statutory duty to "reasonably accommodate" Opuku–Boateng's religious need to observe the Sabbath. *Id.* Ultimately, the court found that the State of California had not satisfied its burden of showing that it could not reasonably accommodate Opuku–Boateng without undue hardship and reversed the district court's finding that the State had done so, and remanded the case for further proceedings. *Id.* at 1475.

The summary judgment evidence in the present case is in stark contrast to those facts set forth in the *Opuku–Boateng* opinion. In *Opuku–Boateng*, the court found that the State of California had conceded the establishment of a *prima facie* case of religious discrimination based, in part, on its failure to hire (an adverse employment action) Opuku–Boateng due to his inability to work on Saturdays as a result of his religious convictions. In Plaintiff's case, Waffle House offered Vaughn five employment options, one of which he accepted, in an attempt to keep him in its employ. Cessation of his position as a district manager and his subsequent acceptance of another position with Waffle House does not constitute either a demotion or discharge for failure to comply with an employment requirement which conflicted with his religious beliefs. As such, the same is not cognizable under Title VII.

## 2. Reasonable Accommodation

 Assuming *arguendo* that Plaintiff has satisfied his obligation of establishing a *prima facie* case of religious discrimination, in the alternative, the court finds that he cannot establish that Waffle House failed to "reasonably accommodate" his religious needs. If, and when, a plaintiff establishes a *prima facie* case of discrimination, the burden then shifts to the defendant to demonstrate that it is unable to "reasonably accommodate" the plaintiff's needs without suffering undue hardship. *See Turpen v. Missouri–Kansas–Texas R.R. Co.*, 736 F.2d 1022, 1026 (5th Cir. 1984). An employer engages in an unfair employment practice if it discriminates against an employee because of any aspect of his religious practices or beliefs, unless the employer shows that it cannot "reasonably accommodate" the employee's religious needs without "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).[10] When offered an accommodation falling within this range, the employee cannot insist upon a specific or more beneficial one; nor must an employer offer one. *E.E.O.C. v. Universal Mfg. Corp.*, 914 F.2d 71, 72–73 (5th Cir. 1990)(per curiam)(citing *Ansonia Board of Education v. Philbrook*, 479 U.S. 60, 68, 107 S.Ct. 367, 371, 93 L.Ed.2d 305 (1986)); *Eversley v. MBank Dallas*, 843 F.2d 172, 176 (5th Cir.1988)(same). Title VII does not restrict an employer to only those means of accommodation that are preferred by the employee. *Bruff v. North Mississippi Health Srvs., Inc., supra*, 244 F.3d at 501 n. 17 (citation omitted). An accommodation can occur in two ways: (1) an employee may be accommodated in his current position by changing the working

---

**10.** 42 U.S.C. § 2000e(j) provides:

(j) The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

conditions, or (2) the employer may offer to let the employee transfer to another reasonably comparable position where conflicts are less likely to arise. *Id.* Where an employer reasonably accommodates an employee's religious needs, the statutory inquiry is at an end. *Philbrook,* 479 U.S. at 68, 107 S.Ct. at 372. While the statutory burden to accommodate rests with the employer, "the employee has a correlative duty to make a good faith attempt to satisfy his needs through means offered by the employer." *Brener v. Diagnostic Center Hosp.,* 671 F.2d 141, 146 (5th Cir.1982); *see also Philbrook,* 479 U.S. at 69, 107 S.Ct. at 372 (citing *Brener,* at 145–146)("bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business.").

■ Vaughn contends that Waffle House should have accommodated him in his district manager position because during the time in which it had done so his restaurants continued to be profitable and encountered no staffing problems. Alter-

natively, Vaughn contends that the five alternatives presented to him by Waffle House constituted a "Hobson's choice," [11] and, further, that Waffle House's proposed accommodations were not reasonable in light of the significant reduction in compensation he would necessarily incur.

With respect to the first of Plaintiff's contentions, the applicable case law is clear: an employee cannot insist upon a specific or more beneficial accommodation, *E.E.O.C. v. Universal Mfg. Corp.,* 914 F.2d at 72–73, and Title VII does not restrict an employer to only those means of accommodation that are preferred by the employee. *Bruff,* 244 F.3d at 501. As such, despite the fact that Plaintiff believed that he could effectively perform his duties as a district manager while taking time off to observe the Sabbath, Waffle House was not obligated to accept an accommodation which Vaughn preferred.[12] Thus, the only unresolved question is whether the accommodations provided to Plaintiff by Waffle House were reasonable.

■ Plaintiff also contends that Waffle House's proposed accommodations were

**11.** Vaughn contends that he was not provided with a meaningful choice as he was essentially forced to choose between retaining his position, district manager- or accepting an economically similar one unit manager- and not be able to observe the Sabbath on a weekly basis, or accepting positions which offered significantly reduced salary but enabled him to observe each Sabbath.

**12.** In an effort to support his contention that he could continue to effectively discharge the duties of a district manager, Plaintiff submitted his own affidavit, and the affidavit of Gloria Dunsworth, which are objected to by Defendant. Defendant also objects to an unsworn statement attributed to David Garnett (Pl.'s App. at 007). *See, e.g.,* Def.'s Objections.

To the extent that the affidavits proffered by Plaintiff contain hearsay, they do not constitute competent summary judgment evidence. Further, to the extent that the affidavits purport to contain personal opinions with respect to Plaintiff's ability to perform the tasks of a district manager, it must be remembered that courts are not authorized to second-guess management decisions made by an employer, unless they are attributable to prohibited discrimination.

Under appropriate circumstances, e.g., when an employer's representative fails to respond to an employee's religious accommodation request or refuses it summarily, such conduct might arguably permit an inference of religious discrimination. However, as noted above, Defendant's representatives not only met with Plaintiff and his pastor to discuss potential accommodations, but also reached an accommodation which Vaughn's pastor found to be acceptable. Further, when Vaughn sought an additional accommodation, Defendant gave him five alternatives in an effort to accommodate his religious beliefs. *See* pgs. 4–5 and n.7, *supra.*

*unreasonable* based upon his claim that his compensation as a human resource specialist was significantly lower than that which he would have received as a district manager. The Fifth Circuit has considered this same argument on at least two separate occasions, and in both instances found it to be unavailing. In *Eversley v. MBank Dallas, supra,* the court reviewed a case in which an employer had attempted to find its employee a Seventh Day Adventistan alternative job to accommodate his Sabbatarian beliefs, and held that even if such a job was compensated at a lower rate, the employer's proposed accommodation was not unreasonable "simply because...it...involv[ed] some cost to the employee." 843 F.2d at 176 (citing *Philbrook,* 479 U.S. at 70–71, 107 S.Ct. at 373). Thereafter, in *Bruff v. North Mississippi Health Srvs., Inc., supra,* the court held that a proposed accommodation which required an employee to take a significant reduction in salary was not unreasonable. 244 F.3d at 502 n. 23 (citations omitted). Taken together, these cases clearly establish that the reasonableness of an employer's proposed accommodation turns on more than just the reduction in compensation which frequently accompanies an employee's assumption of different job duties. In fact, "[r]easonableness...focus[es]...upon the cost to the employer, the extent of positive involvement which the employer must exercise, and the existence of overt discrimination by the em-

ployer." *E.E.O.C. v. Universal Mfg. Corp., supra,* 914 F.2d at 73 n. 3.

The summary judgment evidence reflects that the base pay for the position of district manager was $27,650 (Lenderman's Aff. at 241¶7), while the base pay for a human resource specialist was $35,000. (*Id.* at 249¶32). District managers are required to work at least 54–66 hours per week, 9 to 11 hours per day for 6 days [13](*see* Def.'s App. at 256)(Job Description for District Manager Position), while the position of human resource specialist only required 40 hours of work per week. (Lenderman's Aff. at 249 ¶ 32).

, Although the sum of the base salaries plus bonuses, which would be earned when an employee met minimum performance standards, for the two positions reflects a $10,000 shortfall for the human resource specialist position (*Id.* at 241 ¶ 7; 249 ¶ 32), the difference appears to be a function of the fact that the latter position involved 35% fewer hours of work per week than the minimum weekly hours required of a district manager. Defendant reasonably accommodated Vaughn's request to be relieved of any work performed on his Sabbath, and the fact it resulted in reduced compensation does not render the accommodation unreasonable, especially considering that the number of hours which he was required to work were correspondingly reduced as well.[14]

13. *See* pg. 3, *supra.*

14. In his summary judgment evidence, Plaintiff suggests that he could have earned $100,000 a year as a district manager. However, he has failed to offer any competent evidence to establish that as of February 28, 2000, his base salary together with his earned bonuses equaled a total annual compensation of $100,000. As such, this contention constitutes mere speculation on his part. Similarly, Defendant's suggestion that Plaintiff could

have received annual compensation as a human resource specialist in excess of $100,000, due to the position's unlimited bonus potential, is also a matter of sheer speculation. Succinctly stated, Vaughn has failed to produce competent evidence to establish what his annual compensation would have been had he continued as a district manager and Waffle House has not presented competent evidence to establish what Plaintiff's annual compensation would have been had he continued as a human resource specialist.

The fact that Vaughn bore some "cost" in being permitted to practice his Sabbatarian faith as a result of Waffle House's accommodation of his religious needs, does not render that accommodation unreasonable. *See Eversley* and *Bruff, supra.* Indeed, the "cost" to Vaughn is consistent with the notion that bilateral cooperation is necessary when resolving conflicts between an employee's religious beliefs and an employer's business needs. *See Ansonia Board of Education v. Philbrook, supra.* Therefore, to the extent that Vaughn has done nothing more than claim that Waffle House's proposed accommodations, and, particularly the one which he chose to accept, were compensated at lower levels than his district manager position and absent any evidence of overt discrimination by Waffle House, he has failed to demonstrate that such accommodations were unreasonable.[15] Accordingly, since the court finds that Waffle House has shown that it reasonably accommodated Vaughn's religious needs, the statutory inquiry ends and Waffle House need not show that " . . . [Vaughn's] proposed alternative accommodations would result in undue hardship." *Philbrook, supra,* 479 U.S. at 68, 107 S.Ct. at 372.

### 3. Undue Hardship

■ Although the court is of the opinion that Defendant's alternative basis for summary judgment ends with a determination that, as a matter of law, Defendant reasonably accommodated Vaughn's religious needs, I will address whether his requested alternative accommodation would result in undue hardship to Waffle House. An undue hardship exists, as a matter of law, when an employer incurs anything more than a *de minimis* cost to reasonably accommodate an employee's religious beliefs. *Bruff, supra,* 244 F.3d at 500 (citing *Trans World Airlines v. Hardison,* 432 U.S. 63, 84, 97 S.Ct. 2264, 2277, 53 L.Ed.2d 113 (1977)). The Fifth Circuit has held that Title VII does not require an employer to actually incur accommodation costs before asserting that they are more than *de minimis. Bruff,* at 501 (citing *Weber v. Roadway Express, supra,* 199 F.3d at 274–75 (proposed accommodations can be evaluated as to cost and impact without waiting for them to be implemented, or even waiting for a conflict to occur)).

■ As discussed previously, Plaintiff argues that his proposed accommodation would not have caused a hardship because his assigned restaurants remained profitable and encountered no staffing problems during the period in which he was allowed time off to observe his Sabbath. However, as noted above at pg. 12 n. 12, *supra,* management decisions rest with the employer, not the employee. It is undisputed that when Plaintiff was relieved of his duties as a district manager during high volume shifts[16], either another district manager or a more senior member of Waffle House management would have to oversee Vaughn's restaurants, creating a restructuring of assignments. *See* pg. 6, *supra.* For instance, during the "trial period" from mid-January through the end of February 2000, when Plaintiff was allowed to take off on every Sabbath, others in the management hierarchy were forced to give

---

**15.** It is noted that two of the five alternatives presented to Vaughn only guaranteed that he could observe the Sabbath every other week, *see,* notes 7 and 12, *supra-* and thus could be deemed "unreasonable" to the extent that they failed to eliminate Vaughn's conflict between his Sabbatarian practices and his work requirements. *Favero v. Huntsville Ind.* *School Dist.,* 939 F.Supp. 1281, 1287 (S.D.Tex.1996), *aff'd* 110 F.3d 793 (5th Cir. 1997) (citations omitted). However, the same cannot be said for the remaining three alternatives, including the one which he accepted.

**16.** *See* n. 6, *supra.*

up their weekend days off and other district managers opposed "covering for" Vaughn indefinitely because, *inter alia*, it would affect their own rates of compensation. (Lenderman's Aff. at 247–48 ¶¶'s 26–28).

Title VII does not require an employer to impose additional responsibilities on an employee's coworkers in accommodating that employee's religious beliefs. *See Trans World Airlines, Inc. v. Hardison*, *supra*, 432 U.S. at 81, 97 S.Ct. at 2275 ("It would be anomalous to conclude that by 'reasonable accommodation' Congress meant that an employer must deny the shift and job preference of some employees, as well as deprive them of their contractual rights, in order to accommodate or prefer the religious needs of others, and we *conclude that Title VII does not require an employer to go that far*.")(quotation in original). Further, where, as here, an employer's accommodation would force other employees, against their wishes, to modify their work schedules to accommodate the religious beliefs of a particular employee, the same constitutes an undue hardship. *See Eversley v. MBank Dallas*, *supra*, 843 F.2d at 176.

### III. Conclusion

It is therefore **ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**. A copy of this Memorandum Opinion and Order shall be transmitted to counsel for the respective parties.